**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**HILLARY N. MELENDEZ ORTIZ,**

**Plaintiff,**

**v.** **CASE NO:**

**MARRIOTT HOTEL SERVICES, LLC**
**d/b/a TAMPA AIRPORT MARRIOTT,**

**Defendant.**
_____________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, HILLARY N. MELENDEZ ORTIZ, (hereinafter "Plaintiff" or "Ms. Melendez"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, MARRIOTT HOTEL SERVICES, LLC d/b/a TAMPA AIRPORT MARRIOTT (hereinafter "Defendant," or "the Hotel") and alleges:

## INTRODUCTION

1. The Plaintiff brings this action against Defendant, her former employer, seeking to recover damages for unlawful discrimination based on national origin and sex, and for retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII")

and its implementing Regulations.

2. As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her national origin and sex, subjected her to a hostile work environment, and retaliated against her for opposing and reporting discriminatory conduct in violation of her rights under Title VII.

3. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages including, but not limited to: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5.

6. This Court has jurisdiction to grant declaratory relief, declare

the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## PARTIES

8. Plaintiff, HILLARY N. MELENDEZ ORTIZ, is a Hispanic, Puerto Rican female who resides at 1507 E 99th Ave, Tampa, FL 33612, in Hillsborough County, Florida.

9. Plaintiff is a member of a class protected against discrimination and retaliation based on her national origin and sex under Title VII.

10. During the period from on or about November 2022 until on or about May 4, 2026, Defendant employed Plaintiff as a Housekeeper.

11. At all times material herein, Plaintiff met the definitions of

"employee" and "eligible employee" under all applicable federal statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by Title VII.

13. The Defendant, TAMPA AIRPORT MARRIOTT, is a business entity that operates a hotel with a principal place of business located at 4200 George J. Bean Parkway, Tampa, FL 33607, in Hillsborough County, Florida.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida, and employed more than five hundred (500) employees.

15. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal statutes including, but not limited to, Title VII.

16. Accordingly, Defendant is liable under Title VII for the unlawful discrimination and retaliation to which it subjected Plaintiff as more fully alleged herein.

## ADMINISTRATIVE PREREQUISITES

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On or about July 27, 2026, Plaintiff timely dual filed a Charge of

Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, discrimination based on national origin and sex, and retaliation (EEOC Charge No. 511-2026-03936).

19. On July 31, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights in reference to her Charge of Discrimination against Defendant.

20. This action is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue from the EEOC.

21. All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

22. On or about November 2022, Defendant hired Plaintiff as a Housekeeper at its hotel located at 4200 George J. Bean Parkway, Tampa, Florida. Plaintiff was compensated at a rate of $19.50 per hour.

23. Throughout her employment, Plaintiff performed her job duties in a satisfactory manner, consistently completed her assigned rooms on time, and frequently completed her assignments ahead of schedule. In addition to

her housekeeping duties, Plaintiff performed houseman and overnight duties, including answering calls, organizing the housekeeping area, and stocking linen.

24. Plaintiff is Hispanic and Puerto Rican, and Spanish is her first language. The majority of Defendant's housekeeping staff are of Latin American origin.

25. Throughout her employment, a coworker, Aziah Hamilton, treated Plaintiff differently and harassed her because of her national origin. Ms. Hamilton made comments about Plaintiff's accent and her first language, Spanish, and demanded that Plaintiff and her Latina coworkers speak only English around her, even when the conversation did not include her.

26. On multiple occasions, Ms. Hamilton told Plaintiff, "This is America, speak English."

27. On or about April 2, 2026, when Defendant's new General Manager announced a score in Spanish during a meeting, Ms. Hamilton stated, "He has to say it in English, not in Spanish."

28. Ms. Hamilton also engaged in aggressive and intimidating conduct toward Plaintiff and made repeated remarks that demeaned

Plaintiff because of her national origin and language.

29. Ms. Hamilton also made comments about Plaintiff's physical appearance, telling Plaintiff "now you look fine" and that she looked "pretty," in a tone and manner that made Plaintiff uncomfortable and that Plaintiff perceived to be sexual in nature.

30. When Plaintiff stopped responding to Ms. Hamilton's comments about her appearance, Ms. Hamilton complained to management that Plaintiff was not responding to her.

31. Plaintiff complained to her supervisors on more than one occasion regarding Ms. Hamilton's conduct, but Defendant took no corrective action and the conduct continued and worsened.

32. Defendant's Human Resources department concluded that Ms. Hamilton's conduct was not aggressive and did not investigate further or take corrective action.

33. On or about April 5, 2026, Plaintiff submitted a written complaint to Ms. Yadira Melendez, Senior Rooms Operations Manager, in which she reported the national origin discrimination, Ms. Hamilton's conduct, and that she felt uncomfortable about Ms. Hamilton's comments about her body, which she perceived to be sexual in nature.

34. Despite Plaintiff's complaint, Defendant took no meaningful action, and Ms. Hamilton's conduct persisted.

35. On April 23, 2026, Mr. Mark Richardson, Assistant General Manager, took Plaintiff to the Human Resources office, alleging that Plaintiff had taken more break time than was allowed.

36. Earlier that day, Plaintiff had purchased food and completed her meal break, returning to work before completing her full break. Throughout the day, Mr. Richardson repeatedly appeared in Plaintiff's work areas, even though he was not assigned to housekeeping that day, causing Plaintiff to feel that she was being watched and followed.

37. During the meeting, Mr. Richardson accused Plaintiff of "stealing" from the company by allegedly losing time, and informed Plaintiff that she would be investigated. This accusation was made even though Plaintiff consistently completed her assigned rooms on time, frequently handled additional rooms efficiently, and did not incur overtime.

38. Purchasing food during work hours was a common practice at the Hotel, and Plaintiff had done so previously without discipline or warning. On the same day Plaintiff was singled out, two other employees also purchased food and were not disciplined, and an engineering employee

continued to do so afterward without consequence.

39. On April 25, 2026, Defendant suspended Plaintiff based on Mr. Richardson's observation, without any prior written warning or explanation. April 25, 2026, was the last day Plaintiff worked.

40. On or about May 4, 2026, Defendant informed Plaintiff that her employment was terminated. Defendant stated that Plaintiff was terminated for an "extreme policy violation," which it identified as purchasing food during work hours.

41. Mr. Richardson had told Plaintiff that purchasing food was not the reason for her suspension and was not what she had done wrong, which directly contradicts the stated reason Defendant later gave for Plaintiff's termination.

42. Defendant's shifting and inconsistent explanations for the adverse actions taken against Plaintiff, and its disparate treatment of Plaintiff as compared to similarly situated employees who engaged in the same conduct, demonstrate that Defendant's stated reason for Plaintiff's termination was pretextual.

43. Prior to her suspension and termination, Plaintiff had no written disciplinary record. The only prior discipline in her file was a single

verbal warning issued in or about mid-2025 for not notifying a supervisor before leaving.

44. Plaintiff was informed of her termination by Defendant's Human Resources director during a telephone call, following a purported investigation.

45. Approximately four days after Plaintiff's termination, Defendant cancelled Plaintiff's medical insurance coverage.

46. As a direct and proximate result of Defendant's conduct, Plaintiff suffered a loss of income and benefits and was ultimately forced to accept subsequent employment at a substantially lower rate of pay than she earned with Defendant.

47. As a further direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered and continues to suffer emotional distress, mental anguish, anxiety, humiliation, and harm to her professional reputation, and Plaintiff sought counseling as a result of Defendant's conduct.

## COUNT I
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## National Origin Discrimination and Hostile Work Environment

48. Plaintiff re-alleges and incorporates by reference Paragraphs 1

through 47 as though fully set forth herein.

49. Plaintiff is Hispanic and Puerto Rican and, therefore, a member of a protected class under Title VII.

50. At all times material, Defendant employed Plaintiff and was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

51. At all times material, Plaintiff was qualified for her position and performed the essential functions of her job.

52. During her employment, Plaintiff was subjected to unwelcome harassment because of her national origin, including comments about her accent and her first language, Spanish, demands that she and her Latina coworkers speak only English, and statements such as "This is America, speak English."

53. The foregoing comments and conduct were unwelcome and were directed at Plaintiff because of her national origin.

54. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create an abusive and hostile working environment.

55. A reasonable person in Plaintiff's position would find the environment hostile and abusive, and Plaintiff in fact perceived it to be

hostile and abusive.

56. Defendant, through its supervisors, managers, and Human Resources personnel, knew or should have known of the national origin discrimination and harassment and failed to take prompt and effective remedial action.

57. Instead of correcting the discriminatory conduct, Defendant suspended and terminated Plaintiff's employment.

58. Plaintiff's national origin was a motivating factor in Defendant's decision to subject Plaintiff to different terms and conditions of employment and to terminate her employment.

59. Defendant's stated reasons for Plaintiff's termination were false, pretextual, insufficient, selectively enforced, and/or not the real reasons for its actions.

60. As a direct and proximate result of Defendant's unlawful national origin discrimination, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, prejudgment

interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

**COUNT II**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**Sex Discrimination and Sexual Harassment**

61. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 47 as though fully set forth herein.

62. Plaintiff is a female and, therefore, a member of a protected class under Title VII.

63. At all times material, Defendant employed Plaintiff and was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

64. At all times material, Plaintiff was qualified for her position and performed the essential functions of her job.

65. During her employment, Plaintiff was subjected to unwelcome harassment based on her sex, including comments by Ms. Hamilton about Plaintiff's body and physical appearance, telling Plaintiff "now you look fine" and that she looked "pretty," in a tone and manner that Plaintiff perceived to be sexual in nature.

66. The foregoing conduct was unwelcome, was directed at Plaintiff because of her sex, and Plaintiff did not invite or solicit it.

67. When Plaintiff stopped responding to the unwelcome comments about her appearance, Ms. Hamilton complained to management that Plaintiff was not responding to her.

68. On or about April 5, 2026, Plaintiff reported to Defendant that Ms. Hamilton's comments about her body made her feel uncomfortable and that she perceived those comments to be sexual in nature.

69. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create an abusive and hostile working environment.

70. A reasonable person in Plaintiff's position would find the environment hostile and abusive, and Plaintiff in fact perceived it to be hostile and abusive.

71. Defendant, through its supervisors, managers, and Human Resources personnel, knew or should have known of the sex-based harassment and failed to take prompt and effective remedial action.

72. Plaintiff's sex was a motivating factor in Defendant's decision to subject Plaintiff to different terms and conditions of employment and to terminate her employment.

73. Defendant's stated reasons for Plaintiff's termination were false,

pretextual, insufficient, selectively enforced, and/or not the real reasons for its actions.

74. As a direct and proximate result of Defendant's unlawful sex discrimination, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

## COUNT III
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## Retaliation

75. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 47 as though fully set forth herein.

76. At all times material, Defendant employed Plaintiff and was an "employer" within the meaning of Title VII.

77. Plaintiff engaged in protected activity under Title VII by opposing and complaining about discrimination and harassment in the workplace, including by complaining to her supervisors about Ms. Hamilton's conduct and by submitting a written complaint to Ms. Yadira

Melendez on or about April 5, 2026, reporting national origin discrimination and Ms. Hamilton's comments about her body that she perceived to be sexual in nature.

78. Defendant knew of Plaintiff's protected activity.

79. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including heightened scrutiny and surveillance of her work, suspension on or about April 25, 2026, and termination of her employment on or about May 4, 2026.

80. There is a causal connection between Plaintiff's protected activity and Defendant's materially adverse actions, as demonstrated by, among other things, the close temporal proximity between Plaintiff's April 5, 2026 complaint and the adverse actions that followed.

81. Defendant's stated reasons for its actions were false, pretextual, insufficient, selectively enforced, and/or not the real reasons for its actions, as evidenced by Defendant's disparate treatment of similarly situated employees who engaged in the same conduct and by Defendant's shifting and inconsistent explanations for Plaintiff's suspension and termination.

82. Defendant retaliated against Plaintiff because she opposed conduct made unlawful by Title VII.

83. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 13th day of September 2026.

*/s/ Jason W. Imler, Esq.*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com
Attorneys for Plaintiff